Next case, please. Miss Bryson, good morning. Good morning, Your Honors, may it please the court, counsel. My name is Carrie Bryson, and I represent Michaela Nunn in this case on behalf of the Office of the State Appellate Defender. As the court is aware, we've raised two issues in the briefs, and I hope to talk about both of those today, but I'd like to start with the second issue. This case involved an incident at a gas station late at night, gas station slash quick mart, I guess, and was precipitated by a dispute between Michaela, an ex-boyfriend, and his current girlfriend. The police were called. Michaela ended up being placed under arrest as a result of that earlier incident, but when she was placed under arrest, she was taken down to the ground by the police, had her two front teeth knocked out. Ultimately, she was charged with six offenses, charges of resisting and aggravated battery. Only two convictions came out of those charges, one aggravated battery and a lesser included of resisting, so she stands currently just convicted of the aggravated battery to one of the officers, which alleged a kicking to that officer. So this is a very serious matter. As the court is also aware from reviewing the briefs, this is a very serious matter, and there are two distinct sides in this case. The police, the law enforcement side of the story, which says that Michaela kicked the officer, and then the side of the story that was testified to by Michaela and by standers at the scene that said there was no kicking. Sadly, the best possible evidence of what actually occurred that night at the quick mart has been destroyed. How do you know that? Well, we know videos were destroyed. We know the police ordered the destruction of a video recording of the incident. David Taylor testified he was ordered to destroy a video that he had taken on his cell phone. Officers admitted. Did he... Wasn't he also told to give the phone to the policeman? Right. He... And did he do that? He did not voluntarily turn it over. The police didn't insist that he turn it over. Instead, they told him he could turn it over or he could destroy it. Not wanting to turn over his phone, he complied with their order to destroy the video, delete the video. In fact, his testimony was that an officer actually took his phone and deleted the video for him. One way or another, it was deleted, either at the direction of the police or actually by an officer. And the officers admit that, that they told bystanders to delete recordings. That's not been disputed. So without that evidence, we're left with a close case, one side saying one thing and the other side saying the other. Now, under the Youngblood case out of the United States Supreme Court, the failure to preserve possibly useful evidence is a denial of due process if that failure is done in bad faith, if the police act in bad faith. Definition of bad faith includes a neglect or a refusal to fulfill a duty. The Walker case talked about bad faith in an Illinois case involving the destruction of some physical evidence that the destruction was done six weeks after the arrest was made, but months before the trial in that case. It was not pursuant to a normal police procedure that the evidence in that case was destroyed. And the court there highlighted the central role that evidence would play in the defendant's defense. Similar circumstances here, although the destruction is even quicker. And we have on the scene destruction of evidence of what actually happened here at the direction of the police. There's nothing to suggest that this was done pursuant to some normal police procedure. And it denied everybody the opportunity to review it, that best possible evidence of what actually happened here. What's our standard of review? Oh, we're looking at... It's the motion to dismiss, so whether the court abused the discretion in denying the motion to dismiss. And I've also raised a companion claim that defense counsel was ineffective for not at least requesting an instruction for the jury that they construe the missing evidence against the state. Was this raised in a post trial motion? It was raised orally at trial. It was raised in a written motion filed during the trial. When it was raised orally, the court said, I'm not gonna rule yet, let's see what happens in the case. If she's acquitted, we don't ultimately need to rule on the motion. So then a written motion is filed. She's acquitted of some counts, but not all the counts, obviously. And the court again continues out the motion and says, well, we'll deal with it at sentencing. So the motion was actually heard and finally denied after the trial. So it was raised during the trial. The written motion wasn't ruled on until after the trial. There's not a motion labeled post trial motion addressing this or a motion for new trial addressing it, but it was addressed well after the trial. Now the state has argued forfeiture on the defense part because there's not a formal motion labeled motion for new trial discussing this issue. We've talked about if the court finds it forfeited, which I don't think it's forfeited. This was thoroughly preserved. There's a timely objection and a written motion, but it could be reviewed as plain error either because the evidence here is there was kicking. The other side says there was no kicking. That's really the only dispute. There are a number of witnesses that testify to each. So it's either close or it's fundamentally unfair. I mean, the destruction of an unbiased account of what happened between the parties in this case was destroyed at the direction of the police. And that's fundamentally unfair to this defendant and that she was denied the opportunity to use that evidence. The state also raised claims about, well, this was eavesdropping. And so, you know, it was compliance with the eavesdropping statute to order that it be destroyed. But the eavesdropping statute doesn't anywhere suggest that the police should order the destruction of evidence if it didn't comply. As this court, I'm sure is well aware, the eavesdropping statute has since been ruled unconstitutionally overbroad. And this is a particular type of example that the court cited as to why it's unconstitutionally reporting police conduct in public. It hadn't been, but it has been since then. The eavesdropping statute also I know provides that evidence recorded in violation couldn't be used in a trial, but this could be useful in so many other ways. Even if we're not looking at admitting it at a trial, it certainly could have been a great tool for investigation. Who was there? Who saw what? What actually happened? Could have affected the charging decisions. Could have affected plea decisions. So it's useful for a lot of other reasons. Alternatively, like I said, counsel was ineffective for not requesting an instruction to the jury that the jury be instructed to construe that the missing evidence was against the state. And that type of instruction was mentioned as having been given in Youngblood. It was cited with approval by our first district appellate court in the Danieli case. The state hasn't offered any response to my argument. On that point in their brief. Ms. Bryson, can I go back a minute to the eavesdropping statute? The Supreme Court declared that unconstitutional. Correct. And that decision means that it was Lloyd Abinishio? Correct. So it doesn't help the police in this case? Not at this point. You know, certainly as it was argued at the time, it was still enforced, but we're still, this is still an open direct appeal. So it would certainly apply in this case that it was, it was unconstitutional. Unfortunately, it seems we don't have the videos anymore. It might argue they go to their good faith. I mean, police officers don't have to be constitutional lawyers. Well, except that wasn't at all a reason the police offered for why they instructed that the videos be deleted. They certainly weren't acting to, they thought it was fine that they were being recorded. I think one of the officers said he didn't know. And two of the officers said, yeah, it was okay for them to record. So they didn't even know. Then at the time that eavesdropping statute would have prohibited it and they weren't acting pursuant to it. If I could touch on the first issue in the briefs, then counsel was also an effective there for not fully preserving the issue. That was the jury indoctrination. The questions asked by the prosecutor during the board year in this case were certainly unique. The prosecutor offered hypotheticals and asked jurors to opine on what their potential verdicts might be given a certain number of witnesses or a amount of evidence. Specifically, the prosecutor asked if you brought in two or three witnesses and two or three boxes of evidence, but jurors didn't believe any of it. What would their verdicts be? And if they said not guilty, they were told good. Then they were asked, you know, if, what if I brought you only one witness and one box of evidence and you believed all of it, what would your verdict be? Well, jurors who responded guilty were told good or wonderful. Their, their perspective verdicts were approved of by the prosecutor. This was jury indoctrination and the prosecutor was conditioning those jurors to kind of take an all or nothing approach and distorting the reasonable doubt standard in the process. It is plain error. It's plain error either under the first prong. Because again, this is a closely balanced case. And as this court is well aware, first prong plain error, if the evidence is close, then the seriousness of the error need not be as high. Alternatively, this is a very serious error. So it could be plain error under the second prong because this defendant was denied fundamental fairness by this improper indoctrination. By definition, indoctrination is, you know, forcing a jury to believe one set of beliefs without consideration of another. So submit the type of questioning that went on here was that sort of indoctrination, which by definition is fundamentally unfair. If, if the seriousness of the evidence was close to the seriousness of the error, it's not irrelevant, but it, the closer the evidence, I mean the first prong is closely balanced evidence of plain error. So it's got to be the error. It's still got to be reversible. It's still got to be a reversible error. I mean, we're still looking at was the error reversible. In this case, this error was reversible. We have a jury impaneled by, you know, questions that are indoctrinating them over to a certain set of beliefs, which distorted the reasonable doubt standard in this case, which really is, is which way, which way did those questions indoctrinate the jury? After those questions were done, which was the jury most apt to do? Well, I think the jury was most apt to only acquit if they disbelieved everything the state presented, because that was the way the state set up those questions. If you disbelieve all of our witnesses and evidence, what do you do? Not guilty. But if you believe just one, what do you do? Or only convict if they believe everything. That was not asked. What was asked was if you believe just one, what do you do? And the state knew this wasn't going to be a one witness case. You know, it's not the sort of case where they're thinking we're only going to bring one witness. So I'm going to ask them if they only believe my witness, you know, do they convict? The state knew this was going to involve multiple witnesses, multiple witnesses for the state, not just multiple witnesses between the state and the defense case, but the state itself put on multiple witnesses, three officers, a dispatcher who was on a ride along and a nurse, I believe. So the state had five witnesses. They didn't ask the jurors, you know, what if you believe some or don't believe some. They didn't ask, you know, to balance those things, but all or nothing. If you disbelieve them all, you acquit. But if you believe one, you convict. The wedding hypothetical that was offered by the state's attorney and discussed in the briefs too is problematic because it kind of oversimplifies what a jury is supposed to do. You know, if you recall there, the prosecutor asked jurors, well, you show up late to a wedding and you know, you're asking the people at your table, well, how many times did the couple kiss? Well, you know, you say it was three and another person says it was five. Another person says it was one. What's the juror to believe? Can you tell how many times they kissed? Well, jurors are under the state's hypothetical supposed to answer no. Without any consideration of, well, was the witness who said three more credible or the one who said five or the one who said one, but just can you tell? No. But can you tell that they kissed from those and the jurors were to respond, yes, that was what was approved of by the prosecutor during this four-year. Again, leaving out any consideration of credibility, the credibility would play a part in that. Maybe you could determine, maybe you could still determine they didn't kiss at all. You know, if you don't believe any of the people at your table who are telling you this account, if you don't believe, you know, by then extension, the witnesses who testify, you should find no, but that was not kind of an open question by the prosecutor's questioning. Instead it was, you know, the approved of answer is you still know something happened by telling jurors good when they responded or wonderful when they responded and kind of pushing the jurors expressed some confusion during some of this questioning. Thank you. Rightfully so again, this is pretty, I've not seen anything like this in almost 15 years of reviewing cases. So by the prosecutor's responses, he's telling jurors and by the way, he's questioning, I mean, he's being asked, well, can you tell how many times they kissed, you know, and when there was some confusion kind of pushing on until he got the jurors to say, well, no, I can't tell many, but yes, I can tell that they kissed, you know, that indoctrinates jurors to think, well, if someone says something happened and someone else says something a little different happened, something still must've happened. She still must've kicked. There still must be a basis for this charge. And that's what really comes out of that sort of questioning. And that's why it's improper together. Again, it's, it's plain error because while there was an objection, defense counsel didn't follow it up in a motion for new trial as to the jury indoctrination. You know, in some, you say ask this court to vacate the conviction and dismiss the charge on the basis of the first issue, having to do with the destruction of the videos and denying due process, alternatively reverse and remand for a new trial, either because of counsel's failure to request a missing evidence instruction after the matter of the deleted videos was brought up or because of the jury indoctrination or the combination of both. Thank you. Thank you, Ms. Bryson, Mr. Leonard. Good morning. Good morning. May it please the court counsel, the people contend that both issues were forfeited. I guess I'll address the second issue. First, people be verse Enoch was decided in 1988. Makes it clear that you need to have an objection and file a post trial motion. This was a motion to dismiss filed in the middle of the trial. Even though it was heard after the trial, it still does not become a post trial motion. The trial judge, the purpose of the rule is so the trial judge can correct any ears at the trial level. So because of that, uh, it was forfeited. Well, what would be the purpose then of hearing, um, the motion at all after the trial? I mean, if you're saying that it's a contemporaneous motion, it doesn't qualify as a post trial motion, but they don't entertain it until after the trial. What is its purpose? The purpose was for just the trial judge to rule on the motion. The purpose of the post trial motion is to put any claims of air in that motion that the trial had concluded before he considered it. Well, aren't you just putting form over substance? Uh, well, I don't make the rules. I just try to follow along with the, uh, so he erred in not hearing it during the trial. So it was a, a judicial error. No, the defendant failed to file a post trial motion claiming in that motion. What would he have done if he had ruled the other way? What would have happened? Um, usually the trial judge will probably deny the motion. Let's say that he had granted the motion at that stage in the proceeding. What would have happened then? Um, the motion to dismiss would be allowed. The defendant would be acquitted, I believe at that point. But you still need to file the trial in the trial court, the post trial motion to allege the air. And in this case that didn't happen. The people intend that that was a forfeiture. Even if not forfeited, the defendant was not denied due process. Um, some officer at the scene told the, uh, people who are recording on their cell phones to hand over their cell phones as just this Schmidt stated. Uh, and none of the people would voluntarily hand over their cell phones. So the officers told them to simply delete the videos because it was unlawful. And it was unlawful under the eavesdropping statute. So at the time that they told them to delete the videos, the statute was not unconstitutional and they could reasonably believe and rely on that statute. Uh, Mr. Leonard, before you go on, I'd like to go back a minute to the post trial motion and your claim of forfeiture. How does one do a post trial motion claiming that the trial court made an error when the trial court has not ruled on that motion after the trial judge rules and the motion then defense counsel should have another motion called the post trial motion alleged in her motion, the, uh, for dear issue and also the, uh, issue here that the police illegally destroyed evidence. Okay. Well, I think that Justice O'Brien's questions address that. But you know, my question is how do you file a post trial motion when a decision hasn't been made? I'm saying after the trial judge, after the trial, they heard the decision, they heard the, uh, uh, motion to dismiss the trial judge denied that motion, that it went to a sentencing hearing and she was sentenced. Now the defendant has 30 days to file a post trial motion and within that time 30 days, the defendant failed to file any post trial motion. This I believe is what the Supreme Court was getting to when they wanted the defendant not only to object, but file a post trial motion alleging what the errors are so that the trial judge may address those errors at the trial court before it goes up to the appellate court and preserve that issue for appeal in the trial court. So in this case, after the trial judge denied the motion to suppress defense counsel had those 30 days, uh, he failed to file it. And in that case, uh, the Supreme Court says it's forfeiture. Uh, and this court should honor the forfeiture rule unless there's plaintiffs here. Um, and in this case there was not playing here. Uh, of course there's two problems with the plane here. Rule. Uh, this evidence is that closely balanced. Um, I'm only going to address the conviction for aggravated battery against officer McComb. There was a competing evidence on both sides. Uh, the prosecution had evidence and testimony that she kicked the officer. We have, uh, not only the officer McComb who was the one who was kicked testified to be kicked, but also, uh, Alison Buccalow, uh, the dispatcher and officer Bush also saw the defendant kick, uh, officer McComb. Uh, the other witnesses for the defense, uh, said that she did not kick the officer. However, the important part of evidence in this case is we have the bruise to the officer. Uh, Alison Buccalow said that she saw the defendant kick the officer with their foot in the inner thigh area. They were photographs of the bruise, which was the result of that kick and that was given to the jury. So not only do we have a testimony, but I think the overriding factor here is we have physical evidence. We have the bruise, uh, three people testified about the kick and we have the physical bruise, which I think, uh, makes the evidence not closely balanced. Regarding the second crime, um, um, the defendant was not denied a fair trial because, first of all, we should, I should go back and say that this court should not consider the constitutional issue since it can be ruled that on the statutory issue, uh, i.e. the eavesdropping statute, even if the officers testified that they were unsure of the eavesdropping statute, there is a statute that states that any video or any audio, I'm sorry, with the eavesdropping statute is not admissible in the court of law. So it's irrelevant what the officers knew because it wouldn't have been admissible in a jury trial anyway. But would it have been necessary to have audio? Well, the statute doesn't distinguish between, uh, the video and audio. It only prohibits audio. Right. So cell phones, uh, by default, they take video and audio and, uh, unless it's on mute or, you know, you don't have to have the audio portion of it. Um, series, they can, you know, be split into a series of photographs that the video itself, the video portion is intact. That's true. But still it's a violation of the statute to take any audio. So it would be in violation of the statute. Um, with regard to your question, whether only if they were also doing voice recording at the same time. Yes. I don't see any way you can separate the two because the violation of the record. So if you had it, but if you had a phone that was video and had the audio muted, there is no reporting of the audio portion. Right. That would not be, and we don't know any of that at this point because they were ordered deleted. We don't know if any officer asked, is this photographic only they just said, delete that. And they didn't say delete the voice of it. They said, delete the video, the lead, whatever the recording, I don't know what actual language they use, but delete something. Uh, the feds council mentioned young blood, but that the police must preserve the evidence. But young blood only applies to preserving evidence in the police's custody or their possession. The police don't have to go out and search for evidence for the defendant. This evidence wasn't, but aren't they supposed to be seeking the truth? They are supposed to be seeking the truth. So any evidence that they can provide, um, help to determine what happened and what the truth is. Aren't they supposed to gather that? They should gather that evidence. Uh, but we don't know what's on the video. Um, it's easy to make the argument that it was exculpatory evidence, but it could very easily be inculpatory evidence and it was not in the police possession. So young blood really doesn't apply in this case. And even if you were to apply young blood, there's no evidence of bad faith here. Um, the officers simply believe that they were following the law, that you could not eat, you could not video tape and record a police officer's testimony. The officer doing something in the line of duty and that was a over ruled, but not till after this trial. Now with regard to the, uh, first issue, the board here issue, uh, defense counsel admits that it was forfeited, but asked for plain air review. Um, again, I disagree that the evidence was closely balanced in this case on the aggravated battery to officer McCone because we not only have the testimony, we have the physical evidence, uh, that being the bruise. Furthermore, the, uh, there was no plain air regarding the second prong. Uh, the, there was no air so egregious that it denied the defendant a fair trial. In this case, um, I still don't understand how the board here by the prosecutor even indoctrinated the jury. There's no evidence in the record or does the defendant argue that the jury was biased or, uh, unfair due to the defendant, due to the hypothetical questions. Furthermore, it wasn't even, uh, the prosecutor, but it was the defense attorney also answer a hypothetical question to the jury. Uh, in people where it's Reinhardt, they held that it's permissible to ask hypothetical questions as long as you don't use specific specific facts in your case, uh, or you use the opportunity to ask questions to give you your final argument. And that was not done in this case. So the defendant should not be complaining because he, uh, asked the same questions or same type of questions. So he can't say something that's wrong. He can't do something at trial and then appeal, say that it's air when he contributed to this alleged air. If you don't have any questions, I'd ask that you find that the issues have been forfeited. Affirm the trial judges decision. Thank you, Mr. Leonard. Miss Bryson, any rebuttal? Yes, Your Honor. I want to touch on the argument that counsel's made about the closeness of the evidence and come hanging this case on the bruise that was, uh, the officer sustained. This was more than just an arrest. Maybe if this had just been an arrest and an allegation of kicking and he ended up with a bruise, it might be more compelling. But this defendant was also taken down to the ground by the police officers, by some accounts, slammed to the ground by some accounts, her, at least two people testified her face bounced off the ground. She loses two teeth in the process. That part of it was a violent encounter between the police and Michaela. The bruise could have come during that as well. I think the bruise is less compelling given that this wasn't just, I put her under arrest. She kicked me. I put her in the back of the squad car. There is this, this encounter that nobody disputes. I mean, there's physical evidence of that too. Her two teeth are laying on the ground. Her mouth is full of blood. She ends up in the emergency room and needs ongoing dental procedures to, to remedy that. So the bruise could just as easily have come from that. And the bruise is not enough to overcome an argument that this is a closely balanced case. A couple other points I want to respond to your question of Justice O'Brien about, you don't really need the audio here. You have the video. If this was an eavesdrop violation and they wanted to play the video, there's nothing in that statute that says they couldn't just mute the audio and still use the video. They couldn't still use still shots from the video. Again, also the video, it doesn't just have to be useful for the in-court trial, but would a prosecutor have looked at the video and said, I'm not going to prosecute her. This didn't happen the way my officers are saying it happened. Or vice versa is, is a council noted. I mean, it could have been inculpatory, but it could have been useful in other ways. And it doesn't have to be shown that it was exculpatory. Obviously we can't show that because it's been destroyed. That's why Youngblood says, well, if you can show it was destroyed in bad faith, then we're going to say it's a due process violation. And that's what happened here. The officers didn't say they thought there was an eavesdrop violation happening here. And that's why they ordered people to delete the videos. They said, we asked people to turn them over. Nobody would volunteer. So we told them to delete the videos. The officer, one officer testified, they didn't even bother to ask these people for their names. Um, you know, even if they couldn't have collected the phones on the spot, which they still may have been able to, but even if they couldn't get the witness's name, get a warrant to collect the video. I mean, there are ways that this could have been preserved. Um, they were within reach of the process of the prosecution. This wouldn't have involved the officers going out and searching for evidence for the defendant. This is known evidence. It just would have involved them not ordering people to delete known evidence of what happened here. Given the circumstances, I don't know why they would have wanted this deleted. If it would have backed up what the police said, why would they want people to delete this? This case involved injury to the person they were arresting, a violent injury to her. If this would have backed up their side of the story, they would have wanted it. I would submit, maybe they were concerned that it would not have backed up their side of the story. So deleting it was the best possible thing for the state and the worst possible thing for my client. That's a due process violation that this court should not condone. Touching just on the, um, voir dire and counsel's argument about it being invited error. Defense counsel didn't ask to proceed this way. Defense counsel didn't initiate these hypothetical questioning when the, when the state really got into it. Defense counsel objected and the court overruled that objection. Let me ask you though, in your original argument, you talked about questions about this one witness versus, but they also asked hypotheticals involving boxes of evidence and multiple witnesses, right? So they, they did in terms of if you disbelieve them all, they didn't ask, well, if we bring you, you know, we're going to bring in multiple witnesses. Um, if you believe some or you don't believe others, but it was, if we bring you two witnesses and three boxes of evidence or some combination of that, and you disbelieve everything we will, we present to you, what do you do? That's where the not guilty answers came. There was never a question of, okay, we bring you five witnesses, which is what happened, you know, and you weigh their credibility and decide, you know, you believe some, you don't believe others, you know, weigh the defense case. What do you do? It was all or nothing. Either you disbelieve everything we present you and then you find not guilty or you believe one and you find guilty so that they didn't ask questions along those lines. Again, it's not invited error. Defense counsel was acting to kind of mitigate the damage here and do what he could. He started with the third panel of prospective jurors after this had been going on and his objection had been overruled by the court. Um, so of course the state might have put itself in a position with those questions that you've got to believe everything every one of my witnesses says or it's a not guilty. Except the state didn't ask that sort of questioning. But your argument is, is that it's an all or nothing proposition. Well, that works both ways. In other words, the jury, these, this thing could have indoctrinated him in essence to say, well, if you don't believe everything, then it's, it's not guilt. I would say if the, if the prosecutor had asked questions along those lines, that might be the case. But the prosecutor asked only if you disbelieve all of my evidences, evidence and witnesses, what do you do? So thank you for your time. Your honors. Any other questions? We thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a panel of change.